Filed 7/20/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| GEORGE HARRIS, | B305848 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. EC067088) |
| v. | |
| ABEL ROJAS, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, William D. Stewart, Judge. Affirmed.

The Perry Law Firm and Christopher J. Perry for Plaintiff and Appellant.

Keith A. Robinson for Defendant and Respondent.

————————————

George Harris leased commercial space from Abel Rojas. This appeal concerns the attorney fee clause in their lease.

Harris sued Rojas; Rojas cross-complained. The litigation continued for nearly three years and culminated in a seven-day jury trial. Jurors heard Harris's and Rojas's mutual recriminations. Harris asked the jury for $200,000. The jury gave him $6,450 on his contract claim, which was 3 percent of his request and which the court offset and reduced in the final judgment. For this, Harris's lawyers demanded a $296,744.68 attorney fee from Rojas. The trial court denied the fee request on the ground there was no prevailing party.

We affirm. When the demand is $200,000 and the verdict is $6,450 or less, the trial judge has discretion to decide the "victory" is pyrrhic and nobody won. (See *Hsu v. Abbara* (1995) 9 Cal.4th 863, 875 (*Hsu*).)

I

Two features make the facts hard to discern.

A

First, when relations between Rojas and Harris soured, they improperly divided their single dispute between two courtrooms in the superior court. We call these two suits the Burbank action and the unlawful detainer case. This appeal is from the Burbank action. The unlawful detainer case resolved a portion of this same tenant-landlord controversy but, due to the absence of a notice of related case, it remained separate from this case and, as a formal matter of procedure, is not part of this appeal.

Both parties had a duty to file a notice of related case. (See Cal. Rules of Court, rule 3.300(a) & (b); Form CM-105 <https://www.courts.ca.gov/documents/cm015.pdf> [as of July 15,

2021], archived at <https://perma.cc/JM3X-8BHQ>.) The Los Angeles Superior Court has hundreds of bench officers and courtrooms. When for tactical reasons one side files an action related to an existing case, both sides must file this routine notice. The notice goes to the trial judge in the low-numbered case, who then can decide how to handle the parallel litigation. The notice allows the trial court to promote efficiency, to avoid duplicative effort, to combat judge-shopping, and to minimize the prospect of conflicting results. The trial court system relies on this mechanism to detect and to cure the problem of parallel litigation within its jurisdiction.

Neither side filed the mandatory notice of related case, even though both cases concerned the same parties, the same property, and the conflict arising out of this one relationship. The two cases ended up before different judges. The judge who handled the Burbank action learned of the other case only later, and then chastised both sides for failing to file the required notice: "I never could understand why somebody didn't ask that [the unlawful detainer case] be related, and we could have brought it over here."

Neither Harris nor Rojas has explained this omission, which was discreditable.

B

Second, appellant Harris has given us only an elliptical record. We have no records at all from the unlawful detainer case, which remained procedurally separate due to the omission of the related case notice. Our knowledge of the Burbank action is a little but not much better: we lack trial briefs and the reporter's transcript for the trial. There is no settled statement.

3

We have a transcript of one posttrial hearing, but that hearing refers to trial events only glancingly.

As a result, we have but a vague picture of one of the two trials that resolved this single dispute.

C

We summarize the facts we know.

The dispute between Harris and Rojas arose entirely from their commercial relationship of tenant and landlord. In 2013, the two entered a lease for 1,200 square feet of commercial space. The lease identified the premises, specified the duration and rental rate, and defined rights and duties. For instance, Harris and Rojas agreed to indemnify each other for losses, damages, and expenses resulting from each one's own negligence. In this respect, this contract incorporated tort law, which is significant for reasons we later explain.

The lease contained an attorney fee clause, which made the defaulting or breaching party liable for fees and costs arising "on account of breach or default by either party of any of their obligations hereunder." The clause is mutual in the sense it applies both to Harris and Rojas. The word "either" makes this term reciprocal rather than unilateral.

In the Burbank action, Harris sued Rojas on August 9, 2017. The case concerned Harris's complaints about landlord Rojas. Harris's second amended complaint had his business Tap'd Out as his coplaintiff and included five causes of action: breach of contract, breach of the covenant of good faith, tortious interference, declaratory relief, and negligence–premises liability.

Harris alleged he was one among "myriad" neighboring commercial tenants at this site. Over time, Harris used his leased space for different commercial purposes, including a

4

bicycle repair shop and then a storage area for his restaurant business. Most recently, Harris and a partner ran a studio offering dance lessons. Harris called his studio Tap'd Out Dance Studio.

Harris had complaints about landlord Rojas. Initially there were three main complaints, but apparently Harris later boiled them down to two. First, neighboring tenants protested the loud music from Tap'd Out; Harris contended their protests were unwarranted. Harris's pleading did not explain how unwarranted protests affected or harmed him. Second, unidentified people "unnecessarily badgered" Harris's patrons over parking. The pleading did not link these unidentified people to Rojas. Harris contended Rojas did not resolve these issues, and Rojas's inaction was an unlawful attempt at constructive eviction.

Rojas too had complaints. Rojas filed a cross-complaint against Harris on September 19, 2017 that had three claims: ejectment, breach of contract, and nuisance. Rojas alleged Harris had punched holes in walls, disrupted other tenants with loud music, made unreasonable parking demands, kept premises dirty and unwholesome, and had created "noise, filth, annoyance, and crowding."

On June 22, 2018, Rojas filed a separate unlawful detainer case against Harris, assertedly because Harris had stopped paying rent and would not surrender possession. This case was assigned to a judge different from the one supervising the Burbank action. The two cases had different case numbers. Neither side filed the required notice of related case.

Our information about this unlawful detainer case is limited. Harris apparently chose not to appear. On November

13, 2018, the court reportedly entered a judgment against Harris and in Rojas's favor for possession, for $13,014.66 in past rent, and apparently for accruing interest and rent from the date of judgment. (Our record is suggestive but not conclusive about these details.) Harris reportedly blocked entry to the unit until the sheriff perfected an eviction on March 7, 2019. The four-month delay apparently added rent to Rojas's judgment, bringing the total to over $17,000.

In the Burbank action, a seven-day jury trial began in early January 2020. Lacking a transcript and a settled statement, we have little idea of what happened at trial. We know Harris asked for a $200,000 award. We also have a special verdict form the jury completed, which is our main source of information. We relate what this form reveals.

Each side won something, but neither side won much. The jury's special verdict awarded Harris *$6,450* in damages for Rojas's breach of contract. Tap'd Out got nothing. Rojas won *$6,450* on a negligence claim against Harris.

We pause to note the identical $6,450 figures. The jury awarded $6,450 *for* Harris and *against* Harris. In his bid to be recognized as the prevailing party, Harris ignores this fact.

The limited record explains neither how nor when Rojas added a negligence claim to this case. Nor do we know its factual basis.

Harris also won $500 on a negligence claim against Rojas. The record does not reveal this claim's basis.

The jury wrote on its verdict form that its multiple awards to Harris were for the "exact same identical harm."

To complete our tour of the verdict form, the jurors assigned responsibility for harm at 15 percent for Harris and 85

6

percent for Rojas.  This reduction meant Rojas's award was $967.50.

The Burbank court offset the adjusted sums and entered a net judgment in Harris's favor for either $5,907.50 or $5,882.50. The judgment's internal discrepancy of $5,907.50 versus $5,882.50 is a difference of $25.  Neither Harris nor Rojas seems to have noticed this discrepancy, or if they have noticed it, they have decided against explaining it to us.  We pass by this mysterious detail.

After trial, Harris moved for an award under the lease's attorney fee clause.  His fee and cost request totaled $296,744.68. The court denied Harris's motion, ruling there was no prevailing party.  Harris appeals this order.

II

When a court rules there is no prevailing party, we review the order for an abuse of discretion.  (*DisputeSuite.com, LLC v. Scoreinc.com* (2017) 2 Cal.5th 968, 971, 981.)

The American rule is each side bears its own attorney fees, but parties can contract out of that rule.  When they do, Code of Civil Procedure section 1021 directs courts to enforce their agreement.  (*Id*. ["the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties"].)

This attorney fee clause was mutual, not unilateral, so Civil Code section 1717, which Harris cites, is not material.  The primary purpose of section 1717 is to ensure mutuality of remedy for fee claims under unilateral provisions.  (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 610.)  This lease's fee clause was already mutual, as drafted.  Its reciprocal nature arose from its text, not from application of section 1717.

For two independent reasons, we affirm the trial court's ruling Harris was not a prevailing party. First, Harris's recovery was slight compared to his demand, and the skimpy record he provided gives no other basis for assessing his litigation objective. Second, considering the two related matters together, Harris was no winner at all. We explain.

A

First, recovering five or six thousand dollars on a demand for $200,000 obviously is not a "simple, unqualified" win. (*Hsu, supra*, 9 Cal.4th at pp. 865, 876–877.) A recovery this modest is more nearly the opposite. In this situation, the trial court had discretion to conclude no one won the case because the ostensibly prevailing party received only part of the relief sought. (*Id.* at p. 875.)

How does a trial judge evaluate whether there is a prevailing party? The case law directs courts to determine the party's litigation objectives and to see if it achieved them. (*Hsu, supra*, 9 Cal.4th at pp. 876–877; see also *Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109 [trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives].)

Determining a party's true litigation objective is no mean feat. When the case is strictly about money, the litigation objective is a dollar figure. The true value of a case is a matter of opinion, and parties normally conceal their true opinion on this vital topic. That is why we call that look a poker face. What economists call a reservation price usually is a carefully guarded secret; if the other side perceives this closeted sum, it will offer that amount in settlement negotiations and nothing more. So each side typically bluffs while searching the other side for clues.

Successful mediators use sustained efforts in a confidential setting to extract this private information from both sides. By discovering previously hidden common ground, a mediator can settle the case. But this exploration is often difficult, which is why successful mediators can command premium rates.

The difficulties extend beyond secrecy. A party's valuation can change by the minute as developments arise and as parties gain information. And once the dust has settled, pride often leads everyone to claim victory. Public relations professionals are not the only spin doctors. There are many amateurs as well.

Amidst the posturing and revision, determining a litigant's true objective can be a challenge.

Despite the challenge, trial courts are well positioned to evaluate what counts as a win. The trial court gains familiarity with the parties and the attorneys during the case and the trial. Some interactions are on the record; some are not. The trial judge may have overheard or assisted off-the-record settlement efforts. On-the-record episodes may have unreported aspects. (E.g., *Olive v. General Nutrition Centers, Inc.* (2018) 30 Cal.App.5th 804, 823 [when jury announced the verdict, both sides' faces showed transparent dismay; trial court determined no party prevailed].)

Through it all, trial judges gain perspectives and insights an appellate court is wise to respect.

Harris errs by suggesting he had no reason to include the trial transcript in this appellate record. He cites cases, but none concern whether a party prevailed in litigation.

The trial record, and especially the transcript of the closing argument, usually is an important source of data about a party's true litigation objective. Closing argument comes at the end: the

9

moment of maximum public information about the dispute. The evidence rulings are complete. The audience has gauged the successes and failures of the cross-examinations. The key players have winnowed and elaborated the dispute and made it all concrete. In their summations, the trial lawyers paint the big picture and pitch their considered requests for action.

Harris has blocked our view of all that. Likewise he has omitted the trial briefs and the opening statements from the appellate record.

Harris's second amended complaint *is* in the record. It is a poor substitute. It suffers the routine pleading weakness of vagueness. It prays for damages "according to proof" and asserts the amount in controversy "exceeds" the jurisdictional limit of $25,000. These rote phrases are nearly free of content.

One bit of record information saves Harris from rejection of his appeal simply on the basis of an inadequate record. That information is a line in the posttrial hearing showing Harris asked the jury for $200,000.

On this minimal record, Harris's litigation objective in the Burbank action was purely quantitative: $200,000. So too was his Burbank jury verdict. The court's task is to compare the sum Harris sought with the sum the jury awarded.

On this comparison, we defer to the trial judge's commonsensical decision. Reaping merely five or six thousand dollars after spending three years pursuing $200,000 drastically falls short of the goal. A slight recovery more resembles a tie than a win. (See *Hsu, supra*, 9 Cal.4th at p. 875 [trial court has discretion to say there is no prevailing party when the victory and the loss are evenly divided]; *ibid.* [when the ostensibly

10

prevailing party receives only a part of the relief sought, typically a determination of no prevailing party results].)

Harris acknowledges the Supreme Court's decision in *Hsu*, but he disregards the pages we have just cited, which are governing law and common sense. Litigation is a practical human endeavor, not an entertaining sport where rules can make a one-point margin into total victory. In litigation, spending great effort only to achieve little is not simple and unqualified success. Litigation is not for sport. It is to resolve disputes so everyone can return to productive activity. It always has costs, including opportunity costs.

The decision in *Regency Midland Construction, Inc. v. Legendary Structures Inc.* (2019) 41 Cal.App.5th 994, 999, which Harris cites and which we endorse, is consistent with this law and this common sense. That opinion affirmed a trial court ruling about a prevailing party. Substantial evidence supported the trial court's ruling. (*Ibid.*)

Harris also cites opinions with a variety of numerical quantities. All are consistent with our analysis. (*De la Cuesta v. Benham* (2011) 193 Cal.App.4th 1287, 1290 [party recovering 70 percent of its claim prevails]; *Silver Creek, LLC v. BlackRock Realty Advisors, Inc.* (2009) 173 Cal.App.4th 1533, 1540–1541 [when one side wins $29.75 million and the other wins $1.13 million, the former prevails]; *Ajaxo Inc. v. E\*Trade Group Inc.* (2005) 135 Cal.App.4th 21, 57, 59, fn. 35 [no abuse of discretion to recognize the winner of $1.29 million verdict as the prevailing party].)

Solely on the basis of the Burbank action, we affirm the trial court's ruling: Harris recovered too little to be judged the prevailing party.

11

B

Second, a different analytical path also leads us to affirm. This approach aggregates the judgments from the two cases that should have been unified by a notice of related case. When we combine the two, Rojas is the net winner. Harris is not the prevailing party.

The parties improperly allowed one case to be divided between two courtrooms: the single dispute between Harris and Rojas spawned both the Burbank action and the unlawful detainer case. These two cases should have been the subject of a notice of related cases and should have been under the potential supervision of a single trial judge.

Both Harris and Rojas failed to file the notice.

Harris's failure does not blind us to the reality of the situation, which is that the two trials stemmed from his dispute with Rojas about this 1,200-square-foot space. When determining who prevailed, it is logical to combine the results from the two related but wrongly segregated cases.

Rojas won some $13,000 or $17,000 in his unlawful detainer judgment against Harris, depending on the moment at which one calculates the rent and interest. We need not and do not decide that exact moment because everything is lopsided. Harris won less than $6,000 in his Burbank judgment against Rojas. This war had two battles. Harris decisively lost the war.

Harris protests this approach with three arguments.

First, he insists we focus only on the contract claims and says we must ignore the tort claims. This argument neglects the fact his lease incorporated tort law. Harris's citation of *Orozco v. WPV San Jose, LLC* (2019) 36 Cal.App.5th 375, 409 thus is not on point, for the lease in that case lacked this feature.

12

Second, Harris argues there is no precedent for aggregating related judgments when parties have failed to file a notice of related cases. Perhaps there is no precedent because parties usually follow the rule. The absence of authority does not favor Harris, who offers no logic for why his failure must restrict the court's view of the whole picture.

Third, Harris urges us to disregard that he sued on behalf of Tap'd Out and the jury gave Tap'd Out nothing. We do. An objective observer still would not say Harris won this conflict.

The trial court said Harris did not prevail. This ruling was well within the court's discretion.

## DISPOSITION

We affirm and award costs to Rojas.


WILEY, J.


We concur:



GRIMES, Acting P. J.



STRATTON, J.